UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, AND SELECTIVE INSURANCE COMPANY OF AMERICA,<br><br>    Plaintiffs,<br><br>vs.<br><br>STEADFAST INSURANCE COMPANY<br><br>    Defendant,<br><br>BETHANY COMMUNITY SERVICES, INC., SARAH'S PLACE ADULT DAY HEALTH CENTER, INC., ROBERT LAVANGA, NANCY WALSH BY SHANNON THOMAS-GEORGE UNDER POWER OF ATTORNEY,<br><br>    Interested Parties. | C.A. NO. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

### INTRODUCTION

  Plaintiffs, Selective Insurance Company of the Southeast and Selective Insurance Company of America (collectively, "Selective" or "defendants"), bring this action against Defendant, Steadfast Insurance Company ("Steadfast"), and Interested Parties, Sarah's Place Adult Day Health Center, Inc., Robert Lavanga, and Nancy Walsh, by Shannon Thomas-George acting under a Power of Attorney for Nancy Walsh, to obtain a declaratory judgment pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57 to resolve an actual controversy between the parties concerning their respective rights, obligations and liabilities under separate liability insurance policies issued by Steadfast and Selective.

1

This action specifically seeks a determination regarding Steadfast and Selective's respective obligations to defend and/or indemnify Sarah's Place Adult Day Health Center, Inc. and Robert Lavanga (collectively, the "Insureds") against claims asserted in an underlying civil action captioned *Shannon Thomas-George, Under Power of Attorney for Nancy R. Walsh v. Sarah's Place Adult Health Center, Inc. et al*., assigned C.A. No. 18CV423B in Suffolk County Superior Court (the "Underling Action") under the terms, conditions and limitations of Steadfast's Health Care Liability insurance policy and Selective's Business Automobile insurance policies.

Selective also brings this action to obtain equitable contribution and/or subrogation from Steadfast for the defense and/or settlement costs incurred by Selective in connection with the Underlying Action given Steadfast's wrongful denial of coverage for the claims asserted against its Insureds under its Health Care Liability Policy and Selective's written reservation of its right to contest the extent and availability of coverage afforded by its Business Auto policy.

For the reasons shown below, plaintiffs request that the Court adjudicate the parties' rights and obligations under the policies issued by Steadfast and Selective and enter a declaration that: (a) directs Steadfast to provide the Insureds with defense and indemnification coverage against the claims asserted in the Underlying Action under its Health Care Liability Policy; (b) orders Steadfast to reimburse the defense costs incurred by Selective; and (c) relieves Selective of any obligation to provide the Insureds with defense or indemnification coverage against the plaintiffs' claims under its Policy and allows Selective to withdraw from the Insureds' defense in the Underlying Action.

## THE PARTIES

1. The Plaintiff, Selective Insurance Company of the Southeast, is a duly licensed insurance company organized under the laws of the State of Indiana with its principal place of business located at 11711 North Meridian Street, Suite 800, Carmel, Indiana 46032.

2. The plaintiff, Selective Insurance Company of America, is a duly licensed insurance company organized under the laws of the State of New Jersey with its principal place of business located at 40 Wantage Avenue, Branchville, New Jersey.

3. The defendant, Steadfast Insurance Company, is a duly licensed insurance company organized under the laws of the State of Delaware with its principal place of business located at 1400 American Lane, Schaumberg, Illinois.

4. Interested party, Bethany Community Services, Inc. ("Bethany Community Services") is a non-profit corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business located at 180 Water Street, Haverhill, Massachusetts.

5. Interested party, Sarah's Place Adult Day Health Center, Inc. ("Sarah's Place"), is a non-profit corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business located at 180 Water Street, Haverhill, Massachusetts.

6. Interested party, Robert Lavanga, is an individual who resides in Atkinson, New Hampshire.  Robert Lavanga was employed by Sarah's Place during the relevant time periods at issue in the Underlying Action.

7. Interested party, Nancy Walsh is an individual who currently resides at the Brigham Health and Rehabilitation Center in Newburyport, Massachusetts.

8. Interested party Shannon Thomas-George is an individual who resides at 150 ½ Oakland Avenue, Methuen, MA. Shannon Thomas-George filed the Underlying Action on behalf of Nancy Walsh pursuant to her power of attorney.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332 (a)(1), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizens between the parties.

10. This Court is authorized to grant the parties relief under the Declaratory Judgment Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

11. Venue is proper under 28 U.S.C. §1391(b) because this dispute concerns the extent and availability of coverage afforded by insurance policies issued to insureds located in this judicial district for claims asserted in an Underlying Action initiated to recover for injuries allegedly sustained in an accident in this judicial district.

## THE UNDERLYING ACTION

12. In March 2018, Shannon Thomas-George, acting under a power of attorney for her mother, Nancy Walsh, filed a civil lawsuit assigned C.A. No. 1877CV00423 in Massachusetts Superior Court, Essex County, against Sarah's Place Adult Day Health Center, Inc. to recover for the injuries Nancy Walsh allegedly sustained as a result of a May 9, 2017 Accident.

13. In June 2018, Shannon Thomas-George filed an amended complaint on behalf of Nancy Walsh that added Sarah's Place employee, Robert Lavanga, as a defendant to the

Underlying Action. A true copy of the First Amended Complaint in the Underlying Action is attached hereto as Exhibit A.

14. The First Amended Complaint in the Underlying Action (the "Complaint") alleges that Nancy Walsh was regularly transported to and from the adult day program she attended at Sarah's Place, located in Haverhill, Massachusetts, via a van operated and controlled by Sarah's Place.

15. The Complaint alleges that Nancy Walsh sustained head and brain injuries when she fell while Sarah's Place employee, Robert Lavanga, was helping her return to her home on May 9, 2017 (the "Accident").

16. The Complaint alleges that Nancy Walsh was a known fall risk who used a harness when attending and traveling to and from the Sarah's Place adult day program.

17. The Complaint alleges that Sarah's Place failed to use due care in carrying out its duty to train and supervise their employees in caring for, assisting, and transporting adult day car participants.

18. The Complaint also alleges that Sarah's Place failed to use due care in training and supervising its employees regarding Nancy Walsh's need for "direct hands on support and care" when transporting her to and from her residence given her status as a known fall risk.

19. The Complaint alleges that Sarah's Place and Lavanga's alleged failure to use due care in "transporting, loading, unloading and conveying" Nancy Walsh from the van used by Sarah's Place to her home was the proximate cause of her Accident.

20. The plaintiff's Complaint asserts the following causes of action against Sarah's Place: (a) negligence; (b) negligent supervision and training; (c) negligent rendering of care to a vulnerable party; and (d) breach of contract.

21.     The plaintiff's Complaint asserts the following causes of action against Lavanga: (a) negligence; (b) negligent rendering of care to a vulnerable party; and (c) breach of contract.

22.     In July 2018, plaintiff's counsel submitted a written settlement demand for $3,000,000.00 to Sarah's Place's defense counsel. Plaintiffs' settlement demand was based in part upon the contention that Nancy Adams has incurred approximately $667,000 in medical expenses as a consequence of the Accident.

23.     The trial in the civil action is currently scheduled for January 9, 2020.

## ADDITIONAL FACTS

24.     In January 2017, Shannon Thomas-George, acting under a power of attorney for Nancy Walsh, and Sarah's Place entered into a written agreement concerning Nancy Walsh's participation in an adult day health program located in Haverhill, Massachusetts pursuant to specified daily tuition and transportation charges (the "Agreement").

25.     The Agreement describes Nancy Walsh as a "participant" in the Sarah's Place adult day health program.

26.     As noted in the Agreement, a true copy of which is attached hereto as Exhibit B, Sarah's Place is a nonprofit organization that is licensed by the Massachusetts Department of Public Health.  The services provided to program participants by Sarah's Place include personal care assistance, social services support, meals, communications with the participant's physician(s), monitoring by a Registered Nurse, and transportation to and from the participant's residence.

27.     Sarah's Place is a facility operated by Bethany Community Services, a non-profit organization located in Haverhill, Massachusetts that provides affordable housing and services to elderly individuals.

28. At the time of the Accident, Sarah's Place qualified as an insured under a primary and an excess/umbrella healthcare liability policy issued to Bethany Community Services by Steadfast and a primary business auto policy issued by Selective for the May 15, 2016 to May 15, 2017 policy period (the "Selective Policy"). A true copy of the Steadfast primary Health Care Liability policy issued to Bethany Community Services for the May 15, 2016 to May 15, 2017 policy period (the "Steadfast Policy") is attached hereto as Exhibit C and a true copy of the Selective Policy is attached hereto as Exhibit D.

29. On May 10, 2017, the day after Nancy Walsh's Accident, Selective received its initial notice of the Accident via a telephone call from the insurance agent for Sarah's Place and Bethany Community Services.

30. Sarah's Place and/or Bethany Community Services, Inc. also reported the Accident to Steadfast under its Health Care Liability Policy.

31. As part of its investigation into the Accident, Selective obtained information from Sarah's Place and Robert Lavanga regarding the events surrounding the Accident.

32. During those discussions, Sarah's Place and Robert Lavanga told Selective that the Accident occurred at the entrance to Nancy Walsh's residence when Robert Lavanga briefly let go of her gait belt to open the door to help her into her home.

33. Robert Lavanga was helping Nancy Walsh return to her residence because no one came to the van to accompanying her into the house when he honked the horn a few times to alert her family members to their arrival.

34. At the time of the Accident, Nancy Walsh used a walker for mobility support.

35. While Nancy Walsh told Robert Lavanga that she could make her own way into her home, Lavanga decided to help her get from the parked van to her front door, a distance of approximately fifteen to eighteen feet up a slight incline.

36. When they arrived at the front door, Lavanga had to let go of Nancy Walsh's gait belt to reach for the door knob to open the door. When he did so, she fell backwards, striking her head on the ground.

37. Lavanga remained with Nancy Walsh, who remained conscious after her fall, until the EMTs arrived to assist her.

38. While awaiting the arrival of the EMTs, one or more of Nancy Walsh's family members emerged from her residence to check on her status.

39. Via letter dated June 7, 2017, Selective informed Sarah's Place of its determination that its Policy would not afford coverage for any potential claims arising out of the Accident because Nancy Walsh's injuries were not caused by an "accident" resulting from the "ownership, maintenance or use of a covered 'auto'" within the scope of the insuring agreement in the Selective Policy.

40. Selective also reserved its right to rely upon the professional services exclusion contained in its Policy in its June 7, 2017 disclaimer, a true copy of which is attached hereto as Exhibit E.

41. In its June 7, 2017 disclaimer, Selective explained that its coverage position was based upon information available at that time and requested that Sarah's Place promptly notify it of any lawsuit filed on Nancy Walsh's behalf regarding the Accident.

42. Via email dated June 12, 2017 and correspondence dated June 27, 2017, true copies of which are attached as Exhibit F and G, Steadfast informed Sarah's Place of its

preliminary determination that its Health Care Liability Policy issued to Bethany Community Services, Inc. would not afford coverage for any potential claims arising out of the Accident.

43. In its written communications with Sarah's Place and Bethany Community Services, Steadfast stated that its coverage disclaimer rested upon its determination that (a) Nancy Walsh's Accident was not caused by a "Medical Incident" as defined in the Health Care Professional Liability coverage part of its Policy; and (b) the "auto use" exclusion contained in the Policy's Commercial General Liability coverage part precluded coverage for any claims concerning the Accident.

44. In support of its determination that the Auto Use Exclusion contained in its Policy precludes coverage for any claims arising out of the Accident, Steadfast referred to the statement in the Exclusion that "Use includes operations and **Loading or Unloading**.  Use also includes the loading and unloading of patients." (Emphasis in original).

45. The Steadfast Policy defines the bolded phrase "Loading or Unloading" contained in its Exclusion to mean the "handling of property. . .".

46. Steadfast's "Loading and Unloading" definition does not refer to the transportation of individuals.

47. The references to "loading and unloading" and "patient" in the additional sentence contained in the auto use exclusion in the Steadfast Policy are not defined.

48. To date, Steadfast has not offered any support for its assertion that Nancy Walsh qualified as a "patient" of Sarah's Place, rather than a "participant" in its adult day care program.

49. As noted above, the Agreement between Sarah's Place and Nancy Walsh describes her as a "participant" not as a patient.

50. On information and believe, Sarah's Place is not a licensed medical provider.

9

51. In response to a request for reconsideration conveyed by Sarah's Place's insurance agent, Selective agreed, via letter dated June 20, 2017, to withdraw its disclaimer and continue its investigation into the potential availability of coverage for any claims arising out of the Accident pursuant to a reservation of rights. A true copy of Selective's June 20, 2017 correspondence is attached hereto as Exhibit H.

52. To date, Steadfast has declined to reconsider or withdraw its June 12, 2017 disclaimer or to participate with Selective in providing the Insureds with defense coverage against the claims asserted in the Action under a reservation of rights.

53. Instead, following its receipt of the initial complaint filed against Sarah's Place in the Underlying Action, Steadfast reiterated its denial of coverage for any claims arising out of the Accident via a one paragraph letter dated April 12, 2018.

54. As grounds for its April 12, 2018 disclaimer, a true copy of which is attached hereto as Exhibit I, Steadfast informed Sarah's Place that it is "quite clear that plaintiff Walsh continues to allege the loss arose from the loading and unloading process overseen and handled by your employees at the time she was dropped off at her Methuen MA home."

55. Upon information and belief, Steadfast has not provided Sarah's Place or Robert Lavanga with a written explanation of its coverage position concerning the application of its Health Care Liability Policy to the claims and allegations asserted against Robert Lavanga in the amended complaint filed in the Underlying Action.

56. Upon information and belief, Steadfast has not provided Sarah's Place or Robert Lavanga with a written explanation of its coverage position concerning the application of its Excess/Umbrella liability policy issued to Bethany Community Services, Inc. to the claims and allegations contained in the initial and/or amended complaints filed in the Underlying Action.

10

57. In contrast, following its receipt and review of the initial complaint filed against Sarah's Place in the Underlying Action, Selective agreed via letter dated June 14, 2018 to provide Sarah's Place with defense coverage against the claims asserted in the Underlying Action pursuant to a full and complete reservation of rights.

58. In its June 14, 2018 reservation of rights correspondence, a true copy of which is attached hereto as Exhibit J, Selective informed Sarah's Place that it is unclear whether its Business Auto Policy affords coverage for the injuries Nancy Walsh sustained as a result of the accidental fall "at the doorway of her residence, not in or near the vehicle, and while the vehicle was not in use."

59. As Selective noted in its June 14, 2018 reservation of rights, the insuring agreement in its Policy only affords coverage for claims seeking to impose liability upon an insured for bodily injury or property damage caused by an accident that results from the "ownership, maintenance or use of a covered auto."

60. Unlike some business auto policies, the Selective Policy does not include any references to "loading and unloading operations" in its insuring agreement.

61. Following its receipt and review of the amended complaint naming Robert Lavanga as a defendant in the Underlying Action, Selective informed Lavanga and Sarah's Place that it would provide him with defense coverage against the claims asserted in the Underlying Action pursuant to a reservation of rights.

62. Selective confirmed its agreement to defend Lavanga in the Underlying Action pursuant to a reservation of rights via letter dated September 20, 2018, a true copy of which is attached hereto as Exhibit K.

11

63. Via subsequent discussions and the exchange of written communications, Selective informed Steadfast that it disagreed with its asserted right to rely upon the auto use exclusion contained in its Health Care Liability Policy to deny both defense and indemnity coverage for the claims asserted in the Underlying Action.

64. During these discussions, Selective conveyed its position that the allegations contained in the plaintiff's Complaint could reasonably be construed as seeking to recover for injuries caused by allegedly negligent acts or omissions that lacked the requisite nexus to the use or operation of an automobile.

65. Through its undersigned counsel, Selective also provided Steadfast with a detailed written explanation of the Massachusetts legal authorities that support its position that the auto use exclusion contained in Steadfast's Policy does not relieve it of its obligation to afford Sarah's Place and Robert Lavanga with defense and indemnification coverage for the plaintiff's claims. A true copy of the September 24, 2019 letter sent to Steadfast by Selective's undersigned counsel is attached hereto as Exhibit L.

66. In addition to its failure to give appropriate consideration to plaintiffs' assertion of allegations that state a potentially covered claim encompassed by Steadfast's Policy, Steadfast has also failed to consider extrinsic evidence that supports the determination that Nancy Walsh's accidental fall at the entrance to her residence was not caused by Lavanga's use or operation of the Sarah's Place van, which was parked several feet away from the fall location.

67. When examined against the allegations contained in the plaintiff's complaint and extrinsic information that was available to Steadfast when its issued its April 12, 2018 and June 27, 2017 coverage disclaimers, Steadfast cannot establish that its auto use exclusion

unequivocally eliminates the availability of coverage for the plaintiff's claims against Sarah's Place and Robert Lavanga.

68.     Contrary to its assertions, Steadfast cannot establish that Nancy Walsh's Accident was caused by Robert Lavanga's operation or use of the Sarah's Place van, which was parked several feet away when she fell at the entrance to her home.

69.     Contrary to its assertions, Steadfast cannot establish that the "loading and unloading of patients" provision contained in its auto use exclusion eliminates the availability of coverage for the plaintiff's claims because Nancy Walsh was not a "patient" of Sarah's Place at the time of her Accident.

70.     At a minimum, the dual references to "Loading and Unloading," a defined term that refers to the movement of property, and the reference to the "loading and unloading of patients" renders the auto use Exclusion contained in Steadfast's Policy ambiguous as applied to the relevant factual circumstances, requiring that Steadfast err on the side of affording coverage for this matter.

71.     To date, Selective has incurred approximately $28,000.00 in defense costs on behalf of Sarah's Place and Robert Lavanga in the Underlying Action.

## THE RELEVANT SELECTIVE BUSINESS AUTO POLICY PROVISIONS

72.     The Selective Business Automobile Liability Policy No. A9100051 issued to Sarah's Place for the May 15, 2017 through May 15, 2017 policy period, <u>Exhibit C</u> hereto, contains the following applicable insuring agreement:

*SECTION II — LIABILITY COVERAGE*

   *A. Coverage*

> *We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto"…*

73. Unlike some automobile liability policies, the Selective Policy does not state that the "ownership, maintenance or use" of covered auto includes the "loading and unloading" of an automobile.

74. The Selective Policy contains a $1 million per accident limit of liability.

75. The Selective Policy defines "accident" to include "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'."

76. The van driven by Robert Lavanga on the day of the Accident was listed as a covered auto on the Policy's declaration page.

77. The Policy's "Who is an Insured" section includes permissive users of a covered auto.

78. Robert Lavanga qualifies as an insured under the Selective Policy because he was using a covered auto on the date of the Accident.

79. The Selective Policy contains the following professional services exclusion added by Endorsement:

*This insurance does not apply to:*

> ***1.*** *"Bodily injury" resulting from the providing or the failure to provide any medical or other professional service.*

80. The Policy's definition of "Bodily injury" means "bodily injury, sickness or disease sustained by a person including death resulting from any of these."

14

## THE RELEVANT STEADFAST POLICY PROVISIONS

81.     The Steadfast Health Care Liability Policy No. GLO-9808223-02 issued to Bethany Community Services, Inc. for the May 15, 2016 to May 15, 2017 policy period, <u>Exhibit D</u> hereto, includes a Health Care Professional Liability coverage part of and a Commercial General Liability coverage part.

82.     The Commercial General Liability coverage part of the Steadfast Policy (the "CGL Coverage Part") includes the following insuring agreement:

83.     The Steadfast Policy's CGL Coverage Part contains a $1 million per occurrence limit of liability.

84.     The Steadfast Policy's "Who is an Insured" provisions, as amended by Endorsement, include Sarah's Place as an insured.

85.     The Steadfast Policy's "Who is an Insured" provisions afford insured status to Sarah's Place employees for acts within the scope of their employment or while performing duties relating to the conduct of the insured entity's business.

86.     Lavanga qualifies as an insured under the Steadfast Policy.

87.     The Steadfast Policy CGL Coverage Part includes the following Exclusion:

*2. Exclusions*

*This insurance does not apply to: * * **

*e.  Aircraft, Auto or Watercraft*

*Bodily Injury or Property Damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, Auto or watercraft owned or operated by or rented or loaned to any Insured.  Use includes operation and **Loading or Unloading**.  Use also includes the loading and unloading of patients.*

88.     The Steadfast Policy defines the bolded term "Loading or Unloading" as follows:

***Loading or Unloading** means the handling of property:*

1. *After it is moved from the place where it is accepted for movement into on onto an aircraft, watercraft or **Auto**;*

2. *While it is on an aircraft, watercraft or **Auto**;*

3. *While it is being moved from an aircraft, watercraft or **Auto** to the place where is it finally delivered, but Loading or Unloading does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **Auto**.*

89. Steadfast also issued an excess/umbrella liability policy No. AEC9808224-02 to Bethany Community Services, Inc. for the May 15, 2016 to May 15, 2017 policy period (the "Umbrella Policy").

90. The Umbrella Policy contains an excess follow form coverage part that affords specified coverage over the Steadfast primary Health Care Liability Policy and the Selective Business Auto Policy, subject to a $2 million limit of liability.

## COUNT I – CLAIM FOR DECLARATORY JUDGMENT
**(Against Steadfast)**

91. Selective repeats and reaffirms the allegations on contained in the foregoing Paragraphs 1 through 90 as if fully set forth herein.

92. The actual controversy that has arisen between the parties regarding their respective rights and obligations concerning the extent and availability of coverage afforded by the Steadfast Health Care Liability Policy can be eliminated by a declaratory judgment from the Court pursuant to 28 U.S.C. §2201.

93. Specifically, based upon the foregoing, Selective requests that the Court determine and declare that the CGL Coverage Part of the Steadfast Policy affords defense coverage for the claims asserted against Sarah's Place and Robert Lavanga in the Underlying Action because the allegations in the Complaint, coupled with available extrinsic evidence, are

16

reasonably susceptible of the interpretation that the underlying plaintiff's claims seek to impose liability upon the Insureds for injuries which were caused, in whole or in part, by alleged acts or omissions that fall outside the scope of the Auto Use Exclusion contained in the Steadfast Policy.

94. Selective further requests that the Court determine and declare that the CGL Coverage Part of the Steadfast Policy affords indemnity coverage for any liability imposed upon Sarah's Place and Robert Lavanga in the Underlying Action for injuries which were caused, in whole or in part, by alleged acts or omissions that fall outside the scope of the Auto Use Exclusion contained in the Steadfast Policy.

95. In addition, Selective requests that the Court determine and declare that Nancy Walsh was not a "patient" at the time of the Accident for purposes of the non-defined phase "loading and unloading" contained in the Auto Use Exclusion contained in the Steadfast Policy.

96. Selective also requests that the Court determine and declare that the "loading and unloading" provisions contained in the Auto Use Exclusion contained in the Steadfast Policy are ambiguous as applied to the facts and allegations at issue in the Underlying Action and that the ambiguity must be resolved in favor of affording coverage for the claims asserted in the Underlying Action.

97. In addition, Selective requests that the Court determine and declare that the Steadfast Umbrella Policy affords defense and/or indemnification coverage for the claims asserted against Sarah's Place and Robert Lavanga in the Underlying Action to the extent that they seek to impose liability upon the Insureds for amounts in excess of the $1 million per occurrence limit contained in the underlying Steadfast Policy.

## COUNT II – DECLARATORY JUDGMENT
### (Against Sarah's Place and Robert Lavanga)

98. Selective repeats and reaffirms the allegations on contained in the foregoing Paragraphs 1 through 97 as if fully set forth herein.

99. The actual controversy that has arisen between the parties regarding their respective rights and obligations concerning the extent and availability of coverage afforded by the Selective Business Auto Policy can be eliminated by a declaratory judgment from the Court pursuant to 28 U.S.C. §2201.

100. Specifically, based upon the foregoing, Selective requests that the Court determine and declare that Sarah's Place and Robert Lavanga are not entitled to obtain defense coverage under the Business Auto Policy for the claims asserted against them in the Underlying Action because Nancy Walsh's alleged injuries were not caused by an "accident" resulting from the "ownership, maintenance or use of a 'covered auto'" as required to satisfy the Policy's insuring agreement.

101. Selective further requests that the Court determine and declare that Sarah's Place and Robert Lavanga are not entitled to obtain indemnification coverage under the Business Auto Policy for any liability imposed upon them, and/or settlement entered into to eliminate their potential exposure to liability for, injuries sustained by Nancy Walsh that were caused by any acts or omissions that lacked a sufficient causal nexus to the "ownership, maintenance or use of a 'covered auto'" for purposes of satisfying the Business Auto Policy's insuring agreement.

102. Selective further requests that the Court determine and declare that Selective is entitled to withdraw defense coverage for the claims asserted against Sarah's Place and Robert Lavanga in the Underlying Action because the Steadfast Health Care Liability and Umbrella Policies govern their entitlement to coverage for the claims asserted in the Underlying Action.

## COUNT III – EQUITABLE CONTRIBUTION AND/OR SUBROGATION
### (Against Steadfast)

103. Selective repeats and reaffirms the allegations on contained in the foregoing Paragraphs 1 through 102 as if fully set forth herein.

104. As a consequence of Steadfast's wrongful refusal to defend Sarah's Place and Robert Lavanga against the claims asserted in the Underlying Action, Selective has been forced to incur and pay defense costs which should have been paid, in whole or in part, by Steadfast under its Health Care Liability Policy.

105. Given the foregoing, Selective requests that the Court grant Selective the right to obtain equitable contribution and/or subrogation against Steadfast and order it to reimburse no less than half of the defense costs Selective has incurred on behalf of Sarah's Place and Robert Lavanga in the Underlying Action.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, Selective Insurance Company of the Southeast and Selective Insurance Company of America, respectfully request that the Court enter an Order:

A. declaring that Steadfast Insurance Company is obligated to defend and indemnify Sarah's Place and Robert Lavanga against the claims asserted in, and/or any liability imposed upon them, in the Underlying Action under the terms of the applicable Health Care Liability Policy and Excess/Umbrella policies issued by Steadfast, up to the specified liability limits set forth in said Policies;

B. declaring that Selective does not owe Sarah's Place and Robert Lavanga defense and/or indemnification coverage against the claims asserted in, and/or any liability imposed upon

them, in the Underlying Action under the terms of the applicable Business Auto Policy issued by Selective;

C. awarding Plaintiffs an amount equal to all, or at least half, of the defense costs incurred by Selective in connection with the Underlying Action; and

D. granting Plaintiffs such other and further relief as the Court deems just and appropriate.

SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, and SELECTIVE INSURANCE COMPANY OF AMERICA,
By their Attorneys,

*/s/ Barbara A. O'Donnell*_____
Barbara A. O'Donnell, BBO #544458
SULLOWAY & HOLLIS P.L.L.C.
40 Westminster Street, Suite 201
Providence, RI 02903
Tel: (401) 421-3659
bodonnell@sulloway.com

Dated: November 7, 2019